## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CALVIN R. WHITE | : | |
| 12802 McCarthy Circle | : | |
| Philadelphia, PA 19154 | : | CIVIL ACTION |
| | : | |
| v. | : | No. _____ |
| | : | |
| CITY OF PHILADELHIA, | : | |
| PHILADELPHIA POLICE DEPARTMENT: | | |
| 1515 Arch Street, 17th Floor | : | **JURY TRIAL DEMANDED** |
| Philadelphia, PA 19106 | : | |
| and | : | |
| CHERELLE PARKER, MAYOR | : | **RELATED TO PRIOR CASE FILINGS** |
| 1515 Arch Street, 17th Floor | : | **25-CV-05596-KNS & 25-CV-05843-MAK** |
| Philadelphia, PA 19106 | : | |
| and | : | |
| KEVIN BETHEL, COMMISSIONER | : | |
| 400 N. Broad Street | : | |
| Philadelphia, PA 19130 | : | |
| | : | |
| Defendants. | : | |
| | : | |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.    This action has been initiated by Calvin R. White (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against the City of Philadelphia, Philadelphia Police Department, Cherelle Parker (Mayor), and Kevin Bethel, Commissioner (*hereinafter* referred to collectively as "Defendants") for violations of Age Discrimination in Employment Act of 1967 ("ADEA" – 29 U.S.C. §§ 621 *et. seq.*), Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 2000e *et. seq.*), 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act ("PHRA"). As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.     This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a) (4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3.     This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4.     Pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and Defendants are deemed to reside where they are subject to personal jurisdiction, rendering Defendants residents of the Eastern District of Pennsylvania. As to any claims requiring administrative exhaustion under the EEOC or PHRC, Plaintiff properly exhausted such requirements and timely files this lawsuit.

## PARTIES

5.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.     Plaintiff is an adult individual, with an address as set forth in the caption.

7.    Defendant City of Philadelphia, Philadelphia Police Department ("Defendant City" if referred to individually) is the sixth-most populous city in the United States, and it operates the nation's fourth-largest police department in the nation.

8.    Cherelle Parker ("Defendant Parker" where referred to individually) is a politician who was elected 100th mayor of Philadelphia. She was sworn into office in the aforesaid mayoral role on or about January 2, 2024.

9.    Kevin Bethel ("Defendant Bethel" where referred to individually) is the current Police Commissioner. Defendant Bethel was appointed to be the Police Commissioner by Defendant Parker in January of 2024.

10.    At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

11.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12.    Plaintiff is a 53-year-old, African-American (black) man.

13.    Plaintiff was hired by Defendant City on or about May 22, 1995; and in total, Plaintiff has worked for Defendant City for more than thirty (30) years.

14.    Plaintiff has been *and remains* a highly-credentialed, outstanding law enforcement officer of Defendant City for more than 3 decades (having worked in many capacities).

15.    From a law enforcement perspective, Plaintiff is extremely skilled, very versatile, and has held the position of Lieutenant during the latter part of his employment.

16.     As of in or about April of 2023, a civil service list was published ranking Lieutenants for potential promotion to Captain. This April 2023 civil service list is hereinafter referred to as the "April 2023 List." The April 2023 List was disseminated (and available) on or about April 28, 2023.

17.     There were more than 50 Lieutenants ranked on the April 2023 List. And the April 2023 List *only identifies ranking by examination score*, but there were other permissible factors to be considered for promotion.

18.     Other (typical) factors to consider in promotion can include interview(s) evaluation (as interviews weigh heavily), veterans' status, language fluency, if a family member was killed in the line of duty, and other considerations. The April 2023 List identified candidates for promotion consecutively based upon exam-passing applicants (to provide an "eligible list" for promotional consideration), subject to other considerations mentioned *supra.*

19.     The April 2023 List constitutes public information, and the actual list of rankings – as publicized – was as follows:

| Rank | Full Name |
|------|-----------|
| 1 | Waters III, Joseph |
| 2 | Robbins, Kelly |
| 3 | Graziano, John |
| 4 | Higginson, Louis |
| 5 | Burke, Walter |
| 6 | McKinney, Kenneth |
| 7 | Ganard, Anthony |
| 8 | Mcculum, Stuart |
| 9 | DiDonato, Scott |

| 10 | Gress, Brian |
|---|---|
| 11 | Pastman, Scott |
| 12 | Grandison, Christopher |
| 13 | Acavino, Jr., Joseph |
| 14 | Lee, Michael |
| 15 | Johnson, Anesha |
| 16 | Martin, Massi |
| 17 | Woo, Tony |
| 18 | White, Calvin |
| 19 | Harling, Juaneka |
| 20 | Mella, Enique |
| 21-55 | NAMES OMMITTED |

20.    Plaintiff received a high examination score of more than 50 Lieutenants who tested, and he was ranked #18 on the April 2023 List.[1]

21.    By higher-level management, Plaintiff and other Lieutenants were expressly told that the first twenty (20) Lieutenants (at least) were being considered for promotions to Captain.

22.    **It has been announced that at least 13 Lieutenants would be promoted** to the position of Captain, and others as vacancies opened. Because Plaintiff was in the top exam-scoring 20 candidates (and ranked #18 on the April 2023 List), he was continually assured he would be

---

[1] Technically, Plaintiff was actually considered #11 on the April 2023 List because John Graziano on the April 2023 List was deemed disqualified from consideration (following his exam results).

subject to consideration and likely elevated during the 2-year period in which the April 2023 List was active (explained more *infra*).

23.    As of October of 2023, John Stanford ("Stanford") was the Acting Police Commissioner (a role succeeded by Defendant Bethel, who was actually appointed to the role). Staford, however, remains employed by Defendant City and currently serves as the First Deputy Commissioner, Field Operations for Defendant City.

24.    By November 7, 2023, Defendant Parker had prevailed in the Philadelphia mayoral election. She officially began her term on or about January 1, 2024.

25.    Defendant Parker elevated Defendant Bethel to the position of Police Commissioner contemporaneous to her term commencement (in January of 2024).

26.    As a result of Defendants Parker and Bethel knowing as of November of 2024 that they would oversee Defendant City's Police Department, they upon information and belief sought to review (and intervene in) promotions and/or elevations to Captain positions. It was understood that they were reviewing, evaluating, and giving input and/or decision making into who in 2024 may be elevated or promoted.

27.    It had originally been announced that promotions of 13 Lieutenants to Captain would occur prior to December of 2024. However, this did not occur as a result of desired review and oversight by Defendants Parker and Bethel.

28.    By written communications in early 2024, numerous Lieutenants were notified that they were scheduled for a "Pre-Promotional Interviews."

29.    Because the City of Philadelphia used what is commonly known as the "Rule of 5" to hire, at least 20 Lieutenants were interviewed prior to the spring of 2024 (for promotions to Captain). Plaintiff was of course in the top 20 Lieutenants to be considered.

30.    As explained more below; to avoid promoting beyond the 10th ranked Lieutenant, Defendants did not apply the Rule of 5 to Captain promotions (on this specific occasion) and separately decreased the number of promotions they were going to engage in for Captain positions. This was *a complete aberration* from normal practices.

31.    By March of 2024, it was announced that only nine 9 Lieutenants were being promoted to the positions of Captain. The newly-promoted Captains included 9 of the first 10 highest-scoring candidates on the April 2023 List (as one candidate was upon information and belief disqualified from consideration). In the interest of clarity, Defendant City promoted the first 9 highest-scoring Lieutenants to the position of Captain (excluding a single applicant in the first 10 for ineligibility of that person for other reasons).

32.    As of March 2024, Plaintiff learned he was not being promoted *in the first round* of promotions. Plaintiff was, however, assured he would continue to be eligible for promotional consideration prior to the April 2023 list expiring on or about April 28, 2025 (as in accordance with civil service regulations, it is a 2-year eligibility list). Plaintiff was also assured he was a top candidate.

33.    The manner in which only 9 Lieutenants were elevated to Captain in March of 2024 (as aforesaid) was unusual, suspect, and a deviation from practice, policy, and prior communications. By way of elaboration and example(s):

> (1) It was announced there would be 13 promotions to Captain, not 9. There was a dire police, city and business need for at least 13 promotions. Ordinarily, all announcements are (and were) heeded as to the number of promotions.

> (2) In other categories of promotions (such as to Sergent, Detective, or Lieutenant), Defendant City was actually promoting to and filling the announced number of positions (expected to be filled).

> (3) To avoid considering any candidates above the top 10 exam-scoring candidates on the April 2023 List, Defendant City deviated from its normal promotion practices.

Prior to Captain promotion consideration, Defendant City used the "Rule of 5" to select the best candidates in groups of 5 (based upon numerous factors). Defendant City did not apply the Rule of 5, which would have resulted in Plaintiff's consideration and promotion. <u>Through 2025 and thereafter</u>, Defendant City c*ontinued to use the Rule of 5 for other promotions* within the Police Department (for other non-Captain police job titles). Thus, as of the spring 2024, Defendant had deviated from its hiring practices ***utilizing only exam score*** (and only as to Captain positions) to avoid hiring any applicant outside of the first 9 eligible candidates on the eligibility list.

34.    Plaintiff and other Lieutenants were led to believe (and expressly told by their management hierarchy) that other Lieutenants would be promoted to Captain through 2024 and 2025 prior to the April 28, 2025, expiration of the April 2023 List.

35.    In prior years, elevations to status of Captain within Defendant City took place over <u>multiple rounds</u> during a 2-year eligible list. In total, between the multiple rounds, it was typical to have approximately (and no less than) twenty (20) or more Captains promoted (per eligibility list).

36.    Thus, although Plaintiff was troubled by the proverbial whiplash in his non-elevation to Captain in late 2023 and again in the spring of 2024, he took comfort in knowing that he was going to be next in line for promotion in the coming year (between the spring of 2024 and spring of 2025). Again, hiring (or promotions / elevations) for Captains was typically done in multiple rounds anyway.

37.    Throughout 2024 and 2025, there was a significant shortage of Captains, in addition to numerous vacancies opening for additional Captains. By way of just some examples, in mid-2024 to late 2024, Captains such as Anthony Ginaldi, Danielle Vales, and Daniel Angelucci were separating from Defendant City. These are just a handful of examples, as many other Captains ceased working in such roles as well.

38.    Between 2024 through 2025, some units or districts were only being covered by a single Captain (despite an allocation and need for several), and other units or districts were operating with no Captain(s). The full hiring for all positions and ranks other than Captain was a complete anomaly and a serious detriment to departmental operations (as to the April 2023 List for all job titles).

39.    Throughout 2024, Defendant Bethel was confirming that by March of 2025, he was ensuring "all ranks" were going to be promoted while mentioning shortages and staffing needs for various roles, including "Captains." Defendant Bethel (and other management) mentioned this in numerous meetings.

40.    There were **so many** Captain vacancies (more than a dozen in total) between the spring of 2023 through the spring of 2024 that Lieutenants ranked #11 - #20 on the April 2023 List expected imminent promotions. Several were even buying uniform components because they only receive about one (1) week of notice prior to elevation (when it occurs). *Elevation is not subject to an application process, but rather, selection based upon qualifications and vacancies by Defendants.*

41.    If Defendants followed normal, past, and standard practices as to hiring or promotion protocols, Plaintiff would have unequivocally been promoted to Captain prior to the April 2025 list expiration.

42.    By late 2024, there had been a need, shortage, and allocation for at least another 10-15 Captains depending upon timeframe in the year (beyond those promoted in March of 2024). Based upon budget allocation, vacancies, departures, assurances of hiring, staffing shortages (as to Captains), business necessity, and numerous assurances of essential Captain elevations - -

Lieutenants within Defendant City (including Plaintiff) expected at least another 10-15 promotions from 2024 - 2025 and prior to the April 2023 List expiring (*in April of 2025*).

43.    To Plaintiff's complete shock, Defendant City announced in March of 2025 *inter alia*:

- <u>15</u> officers would be promoted to Lieutenants (and <u>29</u> officers would be interviewed and considered for these 15 promotions).

- <u>58</u> officers would be promoted to Sergeants (and <u>72</u> officers would be interviewed and considered for these 58 promotions).

- <u>12</u> officers would be promoted to Detectives (and <u>26</u> officers would be interviewed and considered for these 12 positions).

44.    Basically, as of March of 2025, despite representing previously and repeatedly representing that "all ranks" would be promoted including "Captains," Defendant City was only promoting positions ***other than*** Captains.

45.    Evidencing the completely disparate application of protocols, policies, and promotion practices to the group of "Captains," Defendants:

- Announced they were *resuming usage of the Rule of 5 <u>as to all other non-Captain promotions</u>*.

- Were not just considering the highest-scoring applicants for promotion, but rather, were interviewing <u>nearly double</u> the potential candidates for each position irrespective of score.

46.    Between 2024 – 2025, Defendants were filling **<u>all</u>** vacant positions within Defendant City's police department ***<u>except</u>*** *for position of Captain*.

47.    On or about April 28, 2025, the April 2023 List expired, and Plaintiff became ineligible for promotion(s).

48.    Determinative factors in Plaintiff's non-promotion through April of 2025 were because of discriminatory reasons, premised upon age and race. By way of explanation(s):

(1) As to Captain positions, Defendants focused on hiring Captains substantially younger than Plaintiff (avoiding those in their 50s and 60s). Instead, Defendants hired Captains who were typically at least (approximately) 10-20 years younger than Plaintiff. Older employees above the 10th rank were not considered for elevations as Captain(s) due to their age (including Plaintiff).

(2) There was a history disparate treatment demographically in Defendants' hiring, retaining, or elevating based upon age in the police department over the last several years. Evidence will reflect a pattern of a demographic change in favor of a younger police force (at all levels).

(3) Plaintiff was more qualified, versatile, and accomplished than nearly every younger Lieutenant who was in fact promoted in lieu of him.

(4) Plaintiff was treated more harshly, was more scrutinized, and given less flexibility than younger law enforcement officers. There was simply a culture of treating older officers (such as Plaintiff) more poorly and as if there was no need to appease them with any requests or flexibility unlike younger officers.

(5) Over the last several years, there was also a culture of race-based hiring, where race was a material consideration in hiring. As to higher-level officer positions (such as Captain and above), non-black and non-minority officers were given preference(s).

(6) The overwhelming majority of the officers elevated to Captain were non-black (as Plaintiff is a black male). And this was despite that Plaintiff was more qualified for promotion than non-black officers elevated or promoted.

(7) When non-black leadership engaged in misconduct, abuses, racial discrimination or other forms impropriety, they were given lesser discipline, transferred, and/or were subjected to favoritism (as opposed to black leadership level employees who faced harsher discipline or immediate termination).

49.    Plaintiff was not elevated or promoted through April of 2025 because of his race and/or age. This will be illustrated, evidenced, and obvious from: (a) other witness testimony; (b) a tremendous disparity in qualifications between Plaintiff and those elevated (in comparison to age and race); (c) an unexplainable deviation from police department practices from 2023 – 2025 to avoid promoting specific Lieutenants; (d) mistreatment of older and black (or minority) higher-ranking police officers in contract to non-black (or non-minority) officers; (e) statistical disparities in race and age as to hiring; and (f) admissions made by higher-ranking management (such as

11

Defendant Bethel) about intentions avoid selecting candidates between #11 - #20 for non-business, illegitimate, and non-merit based reasons.

50.    As a direct, proximate and actual cause of Defendants' discrimination, Plaintiff suffered significant financial losses by non-promotion to his immediate and future finances, as well as to his retirement and benefit entitlements. Moreover, Plaintiff has suffered significant emotional distress.

51.    Plaintiff's non-promotion for the reasons outlined in this lawsuit were at the behest, direction, and coordination of Defendants Parker and Bethel. They are therefore individually liable for such actions in their individual capacities (as named in this lawsuit).[2]

### Count I
### Violations of the Age Discrimination in Employment Act ("ADEA")
### (Age Discrimination)
### - Against Defendant City Only -

52.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

53.    Plaintiff was not promoted because of his age to the position of Captain prior to April 2025 when the April 2023 List expired.

54.    Defendant City's actions as outlined in this lawsuit constitute a violation of the ADEA.

---

[2] The only claim for which Plaintiff seeks individual liability in this lawsuit against Defendants Parker and Bethel is under § 1981 (through § 1983).

**Count II**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**(Racial Discrimination)**
**- Against Defendant City Only –**

55. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

56. Plaintiff's non-promotion the position of Captain prior to April of 2025 because of his race constitutes a violation Title VII.

**Count III**
**Violations of 42 U.S.C. § 1981 (through 42 U.S.C. § 1983)**
**(Racial Discrimination)**
**- Against All Defendants -**

57. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

58. Defendants failed to promote Plaintiff because of his race, and Defendants' actions were:

- A matter of policy or decree from Defendant City itself as orchestrated by the highest-level executives of Defendant City (including the Mayor);

- Premised upon racial considerations.

59. Defendants' actions as aforesaid of creating a culture of discrimination, making discriminatory decisions from the highest levels of executive management, and not promoting Plaintiff because of his race constitute violations of 42 U.S.C. § 1981.

**Count IV**
**Violations of the Pennsylvania Human Relations Act ("PHRA")**
**(Discrimination & Retaliation)**
**- Against Defendant City Only -**

60. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

61.     Plaintiff re-incorporates and re-alleges Counts I – III herein, as such actions constitute identical violations of the PHRA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendants are to promote Plaintiff to the position in which he should have been elevated and make him entirely whole;

B.     Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

C.     Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;[3]

D.     Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

E.     Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F.     Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

---

[3] Plaintiff seeks punitive damages only against the individual defendants to this lawsuit.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

Ari R. Karpf, Esq. (91538)
Allison A. Barker, Esq. (326837)
Eight Neshaminy Interplex, Suite 210
Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com
abarker@karpf-law.com

Dated: October 24, 2025

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

Calvin R. White                                                   :                                    CIVIL ACTION
                                                                       :
                                  v.                              :
                                                                       :
City of Philadelphia, Philadelphia Police Department, et al.    :          NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Desination Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
      and Human Services denying plaintiff Social Security Benefits.                                      ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
      exposure to asbestos.                                                                                            ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
      commonly referred to as complex and that need special or intense management by
      the court.  (See reverse side of this form for a detailed explanation of special
      management cases.)                                                                                              ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (x )

| | | |
|---|---|---|
| 10/24/2025 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: __Defendants place of business__

---

***RELATED CASE IF ANY:*** Case Number: __25-CV-05596-KNS__  Judge: __Kai N. Scott__
Case Number: 25-CV-05843-MAK  Judge: Mark A. Kearney

1. Does this case involve property included in an earlier numbered suit?                                    Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?    Yes ☒

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?  Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply?           Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☒ **is** / ☐ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A.* *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
- ☐ 16. All Other Federal Question Cases. *(Please specify):*_____

*B.* *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44   (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

WHITE, CALVIN R.

**(b)** County of Residence of First Listed Plaintiff    Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS

CITY OF PHILADELPHIA, PHILADELPHIA POLICE DEPARTMENT, ET AL.

County of Residence of First Listed Defendant    Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADEA (29USC621); Title VII (42USC2000); Section 1981 (42USC1981)

Brief description of cause:
Violations of the ADEA, Title VII, Section 1981 and the PHRA.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE   Judge Kai N. Scott
        Judge Mark A. Kearney

Docket Number: 25-CV-05596-KNS
DOCKET NUMBER   25-CV-05843-MAK

DATE   10/24/2025

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE